## Sheila STOKES et al v. RICHLAND HOMES MANUFACTURING Company et al

73-147 499 S.W. 2d 597

Opinion delivered October 1, 1973

*Partlow & Mayes* and *Oscar Fendler,* for appellants.

*Reid, Burge & Prevallet,* for appellees.

George Rose Smith, Justice. This is a claim for death benefits under the workmen's compensation law. The decedent, John Doyle Stokes, was employed by the appellee Richland Homes Manufacturing Company at the time of his death in a traffic accident in 1971. The commission, whose decision was upheld by the circuit court, denied compensation on the ground that Stokes' death did not occur in the course of his employment. Whether that finding is sustained by substantial evidence is the question on appeal.

Richland manufactures, sells, and delivers mobile homes. Stokes was one of Richland's three regular drivers, who were employed to drive Richland's trucks in the delivery of mobile homes. The drivers were paid a minimum weekly wage, plus from 16 to 21 cents a mile for delivering the mobile homes.

Highway regulations, as they are pertinent to this case, required that a truck pulling a mobile home be

accompanied by two specially equipped escort vehicles, one ahead of the truck and the other behind it. Richland did not own any escort vehicles or directly employ any escort drivers. Instead, Richland required its truckdrivers to arrange for their escorts. Richland did, however, pay its drivers an extra 30 cents a mile to enable the drivers in turn to pay the escorts.

When the drivers reported for work at Richland's plant in Manila on the morning of July 27, 1971, Richland had a delivery for one of its drivers, Tommy Horton, but did not have a delivery for Stokes. That meant that Stokes was free to do anything he liked for the rest of the day. Stokes agreed to act as one of Horton's escorts, driving an escort truck owned by Horton. Stokes and Horton had escorted each other in the past, swapping their services rather than making payments to one another. Richland knew that its drivers worked as escorts when off duty and had no objection to that practice.

The other escort that day was W.H. Wallace, who drove his own vehicle. Stokes drove Horton's escort truck and was accompanied by a friend, Melvin Girdley, who went along for the swimming and water skiing that the men planned for later in the day.

The caravan of three vehicles proceeded from Manila to Heber Springs, where the mobile home was delivered to Richland's consignee. On the way the group were stopped by a Commerce Commission agent, and Stokes rewired some lights on the mobile home. Stokes bought a case of beer during the trip.

The mobile home was delivered at about 3:00 p.m. The escort drivers then had no further responsibilities and were at liberty to go their own way. The four men actually went to Greers Ferry Lake and swam, skied, and drank beer until about 8:00 p.m. When they started back to Manila, Horton drove the Richland truck, with Girdley as his passenger; Wallace drove his car; and Stokes drove Horton's escort truck.

The party met again at Newport to get something to eat. Horton thought that Stokes had had enough to drink. When the group left Newport, Stokes was riding as a passenger in the Richland truck with Horton, and Girdley was driving Horton's smaller truck. On the way Horton dozed off and ran off the road, the Richland truck overturned, and Stokes was killed.

Counsel for the claimants argue that Stokes' death occurred either in the course of his regular employment by Richland or in the course of his special employment as an escort driver. We hold that there is substantial evidence to support the commission's finding that Stokes' death did not take place in the course of his employment in either capacity.

We first consider Stokes' status as a special employee. Stokes had no responsibilities as an escort driver after the mobile home was delivered to its consignee. We may assume, without so deciding, that if Stokes had been injured or killed while driving Horton's escort truck back to Manila, the commission might have found the occurrence to have been within the course of Stokes' special employment. But that did not happen. Stokes had been replaced by Girdley as the driver of the escort vehicle. If Horton had the authority to bind Richland by employing Stokes as an escort, then Horton necessarily had the correlative authority to replace Stokes when that action became advisable. Girdley then became the special employee. To hold that Stokes was still a special employee while riding as a passenger with Horton would mean that Richland and its insurance carrier were responsible for a total of three escort drivers at the same time, although no such situation was ever contemplated by anyone.

There remains Stokes' status as a regular employee. The difficulty here is that Stokes did not undertake the trip in his capacity as a regular employee and was not performing any services as such at the time of the fatal accident. It is undisputed that on the day in question Stokes had no duties as a regular Richland driver after he was told in the morning that the employer had no

delivery for him that day. Counsel argue, however, that Stokes resumed his status as a regular employee when he got in the company truck to ride back to his home in Manila with Horton, because he had to report for work at Manila the next morning. Richland, however, had no duty to provide Stokes with return transportation to Manila in the circumstances of this case. To the contrary, in the normal course of events there would have been three drivers on the road with three vehicles, so that Stokes would not have had any occasion to ride with Horton as a passenger. He certainly was performing no duties for Richland. Larson points out that "an isolated and unauthorized ride in the employer's conveyance has usually been held to be outside the course of employment." Larson, Workmen's Compensation, § 17.30 (1972). We cannot say that the commission was without any substantial basis in the proof in concluding that Stokes was not serving Richland in his capacity as a truckdriver at the time of his death.

Affirmed.